IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ETHAN E. PRINTEMPS-HERGET,

    Plaintiff,

v.

MEGAN J. BRENNAN, Postmaster
General of the U.S. Postal Service,

    Defendant.

No. 3:18-cv-00476-MO
OPINION AND ORDER

MOSMAN, J.,

This matter comes before me on Defendant's Motion for Summary Judgment [32]. Defendant claims Plaintiff failed to administratively exhaust all but one of his claims, and that the remaining claim presents no genuine dispute of material fact. I agree with Defendant except with respect to the claims pertaining to the specific incident of Plaintiff's termination from employment. As to those claims, I find that Plaintiff did exhaust his administrative remedies. Therefore, I GRANT in part and DENY in part Defendant's Motion.

## BACKGROUND

On August 17, 2013, Defendant United States Postal Service ("USPS") hired Plaintiff Ethan E. Printemps-Herget to work as a temporary City Carrier Assistant ("CCA"). Schweiner Decl. [33] ¶ 8. Eventually, he was converted to a career position, subject to a ninety-day probationary period. *Id.*

On September 24, 2013, Printemps-Herget filed an Equal Employment Opportunity ("EEO") complaint against USPS (the "September Complaint"), alleging disability and race discrimination. Schweiner Decl. [33] Ex. 6 at 9. A month later, he withdrew the complaint after mediation. *Id.*

About one year later, beginning on August 22, 2014, Printemps-Herget stopped appearing for work. Schweiner Decl. [33] Ex. 2 at 2. According to USPS, he claimed that he was "unable to work due to stress." *Id.* On October 28, 2014, USPS informed him that his continued absence was without authorization, but, according to USPS, Printemps-Herget "refused contact from management and refused to come in for an investigative interview." Schweiner Decl. [33] Ex. 1 at 2; Schweiner Decl. [33] Ex. 2 at 2.

On November 4, 2014, Printemps-Herget filed another EEO complaint against USPS (the "November Complaint"). Schweiner Decl. [33] Ex. 6 at 1. He alleged he was being subjected to "discriminatory harassment" as retaliation for filing the September Complaint. *Id.* In particular, he alleged the following incidents of harassment:

1. On unspecified dates, management publicly disclosed that he was on extended probation because of falsification;
2. On unspecified dates, management disclosed his medical information;
3. On an unspecified date, management delayed his uniform allowance;
4. On an unspecified date, he was transferred to another station; and,
5. On August 7, 2014, he was given a discussion in which the manager was abusive.

*Id.*

On December 12, 2014, USPS notified Printemps-Herget that he would be terminated from employment effective December 13, 2014, for "[f]ailure to maintain your assigned schedule." Schweiner Decl. [33] Ex. 3 at 1.

On March 12, 2015, Printemps-Herget sent a "PS Form 2564-A" to the USPS EEO Office alleging additional incidents of adverse treatment (the "March Complaint"). Schweiner

2 – OPINION AND ORDER

Decl. [33] Ex. 3. Specifically, he alleged "disability and possibly retaliation," describing the relevant incident as his termination from employment at USPS. *Id.* at 1.

On March 23, 2015, the USPS EEO Office ruled on the March Complaint. *See* Schweiner Decl. [33] Ex. 5. In their ruling, the EEO Office first described regulation 29 C.F.R § 1614.106(d) as one that "permits complainant's [sic] to amend a pending EEO complaint to add claims that are like or related to those claims raised in the pending complaint. There is no requirement that the complainant seek or receive counseling on these new claims." *Id.* at 1. The EEO Office then decided that the March Complaint should be treated as an amendment to Printemps-Herget's November Complaint pursuant to 29 C.F.R. § 1614.106(d), but that it should nevertheless be dismissed. *Id.* at 1. Specifically, the EEO Office wrote that:

> A review of your PS Form 2564-A reveals that the additional matters raised *are like or related* to the matters raised in your formal complaint filed on November 4, 2014. Therefore, your new claim will be considered an amendment; however your amended claim is hereby dismissed as discussed below.

> *Id.* (emphasis added).

In explaining the dismissal, the EEO Office described that Printemps-Herget's "contact with the EEO Counselor was untimely," being "well beyond the 45-day regulatory time frame" delineated in 29 C.F.R. § 1614.105(a)(1). *Id.* at 2. This was so, according to the EEO Office, because Printemps-Herget's March Complaint was filed more than 45 days after the alleged discriminatory incident: his termination on December 13, 2014. *Id.*

On June 24, 2015, after completing its investigation of the claims contained in the November Complaint (but not including the allegations made in the March Complaint involving Printemps-Herget's termination) the USPS EEO Office issued its Final Agency Decision. *See* Schweiner Decl. [33] Ex. 6 at 1, 17. USPS held that "the evidence does not support a finding that the complainant was subjected to discrimination as alleged," and closed the complaint. *Id.* at 17.

Printemps-Herget appealed this decision to the Equal Employment Opportunity Commission ("EEOC") which upheld USPS's findings. Schweiner Decl. [33] Ex. 7 at 1. He then appealed the EEOC's decision to the Office of Federal Operations ("OFO"), which affirmed the EEOC and USPS decisions below. *Id.* at 1-3. Printemps-Herget subsequently turned to the federal courts.

This action began on March 19, 2019, when Printemps-Herget, proceeding without counsel, filed a Complaint [2] in this court alleging discrimination based on disability under the Rehabilitation Act.[1] Specifically, he alleges that USPS, beginning in November 2013, engaged in a "campaign of harassment" against him involving various discriminatory actions, including and ultimately culminating with his termination from employment on December 13, 2014. The alleged discriminatory actions leading up to his termination include that:

1) USPS failed to provide typical on-the-job training,
2) USPS improperly kept him in a probationary period,
3) USPS denied him safety equipment, and
4) USPS denied him a uniform allowance and other benefits.

*Id.* at 5-6.

Defendant's Motion for Summary Judgment [32] addresses Printemps-Herget's allegations involving the incident of his termination separate from the alleged incidents of harassment that took place before Printemps-Herget's termination. I will proceed in similar fashion.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] As Defendant notes, while Printemps-Herget stated his claims as violations of the Americans with Disabilities Act ("ADA"), the ADA does not apply directly to the federal government as an employer. Thus, I will evaluate Printemps-Herget's claims under the Rehabilitation Act which does cover federal employees and has shared standards with the ADA. *See* 29 U.S.C. §§ 791(f), 794(d); *Coons v. Sec'y of U.S. Dep't of Treasury* 383 F.3d 879, 884 (9th Cir. 2004).

56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### I. Plaintiff's Claims Specific to the Termination of His Employment.

In its Motion for Summary Judgment [32], Defendant argues that Printemps-Herget's claims surrounding his December 13, 2014, termination must be dismissed because of his "failure to exhaust his administrative remedies." Def.'s Mot. Summ. J. [32] at 7. Specifically, Defendant argues that Printemps-Herget ran afoul of 29 C.F.R. § 1614.105(a)(1) because he was terminated effective December 13, 2014, but "did not seek EEO counseling for that termination until March 12, 2015." *Id.* at 8. Section 1614.105(a)(1) mandates that before filing a formal complaint with an agency's EEO Office, a potential claimant must "initiate contact" with an EEO counselor within 45 days of the alleged discriminatory action to try and informally resolve the matter. 29 C.F.R. § 1614.105(a)(1).

"In order to bring a claim under the Rehabilitation Act, a federal employee must exhaust available administrative remedies," which includes filing an EEO complaint. *Cherosky* 330 F.3d

5 – OPINION AND ORDER

at 1245. As Defendant notes, before formally filing a complaint, a complainant must comply with the counseling requirements of § 1614.105. This includes a timely consultation: "Failure to comply with [29 C.F.R. § 1614.105(a)(1)] is 'fatal to a federal employee's discrimination claim.'" *Cherosky* 330 F.3d at 1245 (quoting *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002)).

But while it is undoubtedly the case that a *new* EEO complaint must meet the counseling requirements of § 1614.105, not all allegations of discrimination come before an EEO Office by way of a new complaint. In accordance with 29 C.F.R. § 1614.106(d), "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims *like or related* to those raised in the complaint." (emphasis added). That raises the question: When amending an existing, pending complaint pursuant to § 1614.106(d), must one comply with the counseling requirements of § 1614.105, including the 45-day requirement?

The USPS EEO Office was not a model of clarity when it ruled on Printemps-Herget's March Complaint in its March 23, 2015, decision. As laid out above, the EEO Office held that the March Complaint constituted an amendment to Printemps-Herget's November Complaint pursuant to § 1614.106(d), and it stated that for such amendments "[t]here is no requirement that the complainant seek or receive counseling on [the] new claims." Schweiner Decl. [33] Ex. 5 at 1. But then it immediately proceeded to dismiss Printemps-Herget's amendment because he had failed to seek counseling in a timely fashion. *Id.* at 2. This makes no sense. For new claims added via amendment, either a claimant is required to seek counseling—and must therefore do so in a timely fashion—or there is no counseling requirement at all.

The parties have not cited any controlling Ninth Circuit precedent on this question. There is, however, persuasive authority directly on point courtesy of the Eleventh and D.C. Circuits.

Both circuits agree that new claims that are "like or related" to those in an existing complaint, and thus may be added to that complaint via an amendment pursuant to § 1614.106(d), do *not* have to meet the counseling requirements of § 1614.105 (including the 45-day requirement). *See Weber v. Battista*, 494 F.3d 179, 183 (D.C. Cir. 2007) (explaining that "[i]f the new claim meets [the] requirement[s]" of § 1614.109(d), "then '[t]here is no requirement that the amendment be subject to counseling.'") (quoting *Core v. Brownlee*, Appeal No. 01A34550, 2004 WL 189570, at *1 (E.E.O.C. Jan. 23, 2004)); *Ramirez v. United States*, 686 F.3d 1239, 1246 n.4 (11th Cir. 2012) ("[A] claim 'like or related to' the original claim is not subject to the 45-day counseling requirement.").

I agree with the position of the Eleventh and D.C. Circuits because I think it is the best reading of the text of §§ 1614.105(a) and 1614.106(d). First, § 1614.105(a) states that a complainant "must consult a Counselor *prior to filing a complaint* to try to informally resolve the matter." (emphasis added). If the authors of this section wanted to require counseling any time an already-filed complaint was amended, it would have been easy to do so.[2] Second, there is nothing in the text of § 1614.106 linking the amendment process of § 1614.106(d) with the requirements of § 1614.105. Third, § 1614.107(a)(2) confirms this separateness. That section states that an agency shall dismiss an entire complaint "that raises a matter that has not been brought to the attention of a Counselor *and* is not like or related to a matter that *has* been brought to the attention of a counselor." 29 C.F.R. § 1614.107(a)(2) (emphasis added). In other words, if a matter has not been brought to the attention of a Counselor, but that matter is "like or related" to a matter that already *has* been brought to the attention of a Counselor, the complaint will not

---

[2] Congress might have written instead, for example, that a complainant "must consult a Counselor prior to filing *or amending* a complaint." Here's another: "Every new allegation of discrimination must first be discussed with a Counselor."

7 – OPINION AND ORDER

be dismissed. That is what occurs when someone properly files a complaint after going through counseling, and then properly amends that complaint without going through counseling a second time.

Because I hold that an amendment to an EEO complaint pursuant to § 1614.106(d) does not need to meet the counseling requirements of § 1614.105, the only remaining question is if Printemps-Herget's March Complaint is properly construed as an amendment to his November Complaint. On that question I agree with the EEO Office's March 23, 2015, decision. Printemps-Herget's November Complaint alleged he was facing retaliatory, discriminatory harassment for filing his September Complaint. The March Complaint alleges his termination was both an instance of disability discrimination and "possibly retaliation" for filing both his September and November Complaints. Schweiner Decl. [33] Ex. 4 at 1. It is thus sufficiently related to the claims in the November Complaint to be considered an amendment under § 1614.106(d).

As Printemps-Herget's March Complaint was a proper attempt to amend his November Complaint under § 1614.106(d), he was not subject to the 45-day requirement of § 1614.105(a)(1). He thus did not fail to administratively exhaust his claims involving the incident of his termination.

In its Reply brief [35], Defendant hints at the notion that it has raised two grounds for summary judgment on the termination claims: 1) Printemps-Herget's failure to exhaust administrative remedies, and 2) his failure to provide any excuse for his extended absence from work. Def.'s Reply [35] at 2. But this is too little, too late. Nowhere in its Motion does Defendant raise the second ground for summary judgment, and its glancing, inchoate reference in its Reply is insufficient.

Therefore, Defendant's Motion for Summary Judgement [32] with respect to the claims arising out of Printemps-Herget's December 13, 2014, termination is denied.

## II. Plaintiff's Discriminatory Harassment Claims That Preceded His Termination.

Defendant makes two arguments regarding the group of allegations that Printemps-Herget asserts amounted to a discriminatory "campaign of harassment" against him and which preceded his termination. First, Defendant argues that three of his allegations—that USPS 1) failed to provide typical on the job training, 2) improperly kept him in a probationary period, and 3) denied him safety equipment—were not administratively exhausted, as Printemps-Herget never aired these specific allegations in any EEO process before bringing them here. Def.'s Mot. Summ. J. [32] at 8. Second, Defendant acknowledges that the remaining allegation—that USPS discriminatorily denied him a uniform allowance—was administratively exhausted. *Id.* at 9. But Defendant argues that the evidence presented thus far conclusively shows that Printemps-Herget's delay in receiving a uniform allowance was the result of a station-wide delay that affected all CCA's, rather than the result of discrimination against Printemps-Herget. *Id.*

I agree with both of Defendant's arguments. With respect to the first argument, as described above, a plaintiff must exhaust his administrative remedies before bringing discrimination claims under the Rehabilitation Act in federal court. *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003). Printemps-Herget did not raise the claims relating to training, the probationary period, or the safety equipment in any of his EEO complaints. Thus, he cannot raise them here.

As to Defendant's argument regarding the uniform allowance, Defendant met its initial burden in presenting evidence which identified the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As described in USPS's Final Agency

Decision evaluating Printemps-Herget's November Complaint, USPS Customer Service Manager Kenneth Streicher testified that:

> [Printemps-Herget] *and all the other CCAs* at the Piedmont Station experienced delays in receiving their uniform allowances because, as the new person responsible for administration of uniform allowances, [Streicher] had never done the administration for uniform allowance before; he had no experience with CCA employees; and his requests for funding for the uniform program were denied due to errors.
>
> Schweicher Decl. [33] Ex. 6 at 14 (emphasis added).

I agree with the USPS EEO Office, the EEOC, and the OFO that this testimony constitutes a legitimate, non-discriminatory explanation for the delay of Printemps-Herget's benefits. Because Defendant met their initial burden, the burden of production shifts to Printemps-Herget to offer sufficient evidence to establish that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. He has not done so. In his briefing responding to the present motion, Printemps-Herget reasserts that certain employees "got the uniform allowance on time, out of turn, before Plaintiff received the benefit," but cites no evidence to support this contention. Pl.'s Sur-reply to Def.'s Mot. Summ. J. [38] at 2. As described above, this is not enough to survive summary judgment.

Therefore, Defendant's Motion for Summary Judgment [32] with respect to Printemps-Herget's claims of discriminatory harassment that preceded his termination is granted and these claims are dismissed with prejudice.

//
//
//
//
//
//

## CONCLUSION

For the reasons stated above, I GRANT in part and DENY in part Defendant's Motion for Summary Judgment [32]. Plaintiff Printemps-Herget's claims with respect to the alleged discriminatory harassment that took place in time before his termination from employment are DISMISSED with prejudice. His claims alleging discrimination and retaliation related to the specific incident of his termination from employment may proceed.

IT IS SO ORDERED.

DATED this 19 day of September, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge